IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MIGUEL SANTANA-AVILES,

**Plaintiff**,

v.

UNITED STATES OF AMERICA,

**Defendant.**

CIVIL. NO. 25-1335 (RAM)

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court is Petitioner Miguel Santana-Aviles ("Petitioner" or "Santana-Aviles")'s *Motion Under 28 U.S.C § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* ("§ 2255 motion"). (Docket No. 1). Having considered the arguments of the parties at Docket Nos. 1 and 9, the Court **GRANTS** Petitioner's *Motion*. No evidentiary hearing is required because the existing record conclusively establishes ineffective assistance of counsel and the denial of Petitioner's right to appeal. Petitioner's conviction in case 22-cr-82-2 will be **VACATED** and a judgment will be entered that is identical to the previous judgment in all respects except for the date of entry. This will allow Petitioner to pursue an out-of-time appeal.

## I. BACKGROUND

Sentences meted out in four separate criminal cases are relevant to Petitioner's § 2255 motion.

### A. Criminal Cases No. 18-cr-808-1 and No. 20-cr-400[1]

On December 27, 2018, a Grand Jury returned an indictment in case 18-cr-808-1, charging Petitioner with illegal possession of a machinegun and being a felon in possession of a firearm. (18-808, Docket No. 7). On November 30, 2020, Petitioner was charged with one count of interstate threats in case 20-cr-400 and waived his right to prosecution by indictment. (20-400, Docket Nos. 1 and 2). On the same day, Petitioner entered a combined plea resolving both cases, pleading guilty to the felon in possession of a firearm count from case 18-cr-808-1 and the interstate threats count from case 20-cr-400. (18-808, Docket No. 72). On August 19, 2022, Petitioner was sentenced to thirty-two (32) months of imprisonment for the firearm possession count from case 18-cr-808-1, to be served consecutively with twenty-four (24) months of imprisonment for the interstate threats count from case 20-cr-400. (Id., Docket No. 143).

---

[1] References to docket entries in this section refer to the following cases: Criminal Case No. 18-cr-808-1 ("18-808") and Criminal Case No. 20-cr-400 ("20-400").

### B. Criminal Case No. 21-cr-30-2[2]

On February 2, 2021, a Grand Jury returned an indictment in case 21-cr-30-2, charging Petitioner with one count of assaulting, resisting, and impeding an officer. (Docket No. 1). This case went to trial and the jury returned a guilty verdict on March 23, 2022. (Docket Nos. 160 and 162). On August 4, 2022, Petitioner was sentenced to eighty-seven (87) months of imprisonment. (Docket Nos. 200 and 201). Hence, by the end of 2022, Petitioner had been sentenced to 143 months of imprisonment between cases 18-cr-808-1, 20-cr-400, and 21-cr-30-2.

### C. Criminal Case No. 22-cr-82-2[3]

The last of Petitioner's criminal cases was case 22-cr-82-2, a large drug trafficking conspiracy case involving Petitioner and nineteen other co-defendants. (Docket No. 3). A Grand Jury returned an indictment on March 3, 2022, charging Petitioner with conspiracy to possess with intent to distribute drugs. Id. On April 17, 2024, Petitioner agreed to a plea deal which contained a waiver of appeal: he agreed to forego his right to appeal if the imposed sentence was 144 months or less. (Docket No. 386 at 5). On the same day, he pled guilty to the conspiracy charge. (Docket No. 388). On July 18, 2024, in the hearing that is the subject of his § 2255 motion, Petitioner was sentenced to one hundred and forty-

---

[2] Any reference to a docket entry in this section only refers to Criminal Case No. 21-cr-30-2 ("21-30").
[3] Any reference to a docket entry in this section only refers to Criminal Case No. 22-cr-82-2 ("22-82").

four (144) months of imprisonment. (Docket No. 492). These 144 months were to be served in the following manner: (1) concurrently with the 32 months of imprisonment from case 18-cr-808-1; (2) partially concurrently with 43 months of the 87 months of imprisonment from case 21-cr-30-2-- meaning that the new term of imprisonment would run **consecutively** to the other 44 months of imprisonment from case 21-cr-30-2; and (3) **consecutively** to the 24 months of imprisonment from case 20-cr-400. Id. In other words, Petitioner was to serve a new 144-month sentence, **consecutive** to the combined 68 months retained from cases 20-cr-400 and 21-cr-30-2--a cumulative sentence of 212 months.

### D. Civil Case No. 25-1335

On June 23, 2025, in the § 2255 motion pending before the Court, Petitioner moved to vacate, set aside, or correct his sentence from case 22-cr-82-2. (Docket No. 1). Petitioner's two grounds, while styled with different labels, both center around his allegation that he was provided with ineffective assistance of counsel. Id. at 10-11. The first ground is that Petitioner's attorney incorrectly advised him at the sentencing hearing that only the 24 months from case 20-cr-400 would run consecutively to his new 144-month sentence, without mentioning the 44-month term from case 21-cr-30-2 that would also run consecutively to that sentence. Id. at 10. Petitioner alleges he waived his right to appeal in the belief that he would receive only a sentence of 168

months, not the cumulatively 212-month term he currently serves. Id. Petitioner's second ground is based on the same set of facts and simply restates that had he known about the longer sentence, he would not have waived his right to appeal. Id. at 11.

On September 24, 2025, Defendant United States of America ("the Government") responded to Petitioner's § 2255 motion ("*Response*"). (Docket No. 9). The Government contends that both of Petitioner's claims are procedurally defaulted as they could have been raised on direct appeal. Id. at 3. Moreover, it rejects the ineffective assistance of counsel argument because of Petitioner's alleged inability to identify a specific act or omission by counsel that fell below the objective standard of reasonableness under the Strickland v. Washington test. 466 U.S. 668 (1984); id. at 4. Nor, according to the Government, does Petitioner demonstrate that the outcome of the proceedings would have been different had counsel not made the alleged error. Id. The Government references the sentencing hearing transcript as establishing counsel for Petitioner's attempts to have Petitioner comprehend the Presentence Report. Id.; *see* (22-82, Docket No. 582).

As to the second ground, the Government argues that denial of right to appeal claims based on ineffective assistance of counsel can only be brought in situations where the defendant expressly demands an appeal and their attorney refuses to file one. (Docket No. 9 at 5). The Government argues that Petitioner was advised of

his appeal rights in the sentencing hearing and that the transcript records Petitioner waiving his appeal. Id.; *see* (22-82, Docket Nos. 386 at 5, 582).

## II.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner who is in custody under a sentence imposed by a Federal Court may move to vacate, set aside, or correct his sentence:

> [U]pon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

A petitioner's post-conviction request for relief "must show that his sentence 'reveal[s] fundamental defects which, if uncorrected, will result in a complete miscarriage of justice.'" Lebron-Martinez v. United States, 2021 WL 3609658, at *2 (D.P.R. 2021) (quoting Gomez-Olmeda v. United States, 2021 WL 785725, at *2 (D.P.R. 2021)). Petitioner has the burden of establishing such a defect. Id.

## III. DISCUSSION

Before this Court can consider the merits of Petitioner's ineffective assistance claim, it must address two threshold issues: the existence of Petitioner's waiver of appeal, and the Government's assertion that his claims are procedurally defaulted.

### A. Waiver of Appeal

Prior to pleading guilty, Petitioner signed a plea deal containing a waiver of appeal. (22-82, Docket No. 386 at 5). He agreed that "if the imprisonment sentence imposed by the Court is 144 months or less," he would waive "the right to appeal any aspect of this case's judgment and sentence, including, but not limited to the terms of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release." Id. The Court ultimately sentenced him to a term of 144 months. (22-82, Docket No. 492). While this sentence was structured to run consecutive to the combined 68 months retained from cases 20-cr-400 and 21-cr-30-2--a cumulative length of imprisonment of 212 months--it is the 144-month term actually meted out in case 22-cr-82-2 that is operative for the purposes of the appeal waiver.

First Circuit case law clearly establishes that the "imprisonment sentence imposed by the Court," (22-82, Docket No. 386 at 5), refers only to the federal term imposed in the case covered by the plea deal; it does **not** relate to the practical aggregate time a defendant may spend in custody as a result of consecutively running sentences. *See, e.g.*, United States v. O'Farrill-López, 991 F.3d 45, 49-50 (1st Cir. 2021) (articulating the First Circuit rule that when a waiver says nothing "about concurrency or consecutiveness" and the court imposes a term of imprisonment running consecutive to a prior sentence, the waiver is valid whenever "the sentence imposed coincide[s] with the

triggering event described in the plain language of the [waiver's] sentence-recommendation provision — and nothing more [is] required for the waiver to take effect"); United States v. Santiago, 947 F.3d 1, 3 (1st Cir. 2020) (enforcing a waiver where a sentence was within the agreed range, even though it ran consecutively to a prior sentence). Circuits elsewhere have consistently taken a similar approach. *See, e.g.*, United States v. Cook, 2022 WL 1515949, at *2 (11th Cir. 2022); United States v. Padron, 631 F. App'x 250, 251 (5th Cir. 2016).

However, the conclusion that Petitioner signed an applicable appeal waiver does not end the Court's inquiry. Supreme Court precedent has squarely held that the existence of an appeal waiver does not extinguish an ineffective assistance of counsel claim in relation to the denial of the right to appeal. In Garza v. Idaho, the Supreme Court ruled that when a lawyer's actions deprive a defendant of an appeal he would otherwise have chosen to pursue, prejudice is presumed and ineffective assistance of counsel may be established even when the defendant had waived his right to appeal. 586 U.S. 232, 247 (2019). Garza taught that the existence of an appeal waiver does not relieve counsel of the duty to consult in appropriate circumstances. Id. The Garza Court emphasized that appeal waivers are not "monolithic" and do not extinguish all appellate rights: "no appeal waiver serves as an absolute bar to all appellate claims...[a] valid and enforceable appeal

waiver...only precludes challenges that fall within its scope." Id. at 238 (internal citations omitted). Some claims remain unwaivable, such as the question of whether the waiver itself was knowing and voluntary, and even waived claims may be heard if the government forfeits the waiver or breaches the plea deal. Id. at 238-39. The First Circuit has applied this framework in Rojas-Medina v. United States, where the petitioner pled guilty and consented to a waiver-of-appeal provision before later bringing a § 2255 claim alleging that his lawyer failed to consult with him about an appeal. 924 F.3d 9, 12-13 (1st Cir. 2019). Citing Garza, the First Circuit held that counsel still has a duty to consult when a rational defendant might want to appeal or when the defendant reasonably demonstrates interest in appealing. Id. at 17.

In the case at bar, while Petitioner's appeal waiver is valid despite his consecutively running sentences, the Court concludes that it does not foreclose his present allegations that his attorney rendered ineffective assistance in connection with the loss of that appeal. *See* Garza, 586 U.S. at 247.

**B. Procedural Default**

The Court next turns to the Government's procedural default-based arguments. The voluntary nature of a guilty plea can typically be contested on collateral review pursuant to 28 U.S.C. § 2255 if the plea has been challenged on direct appeal. *See* Perez-

Mercado v. United States, 2021 WL 666863, at *4 (D.P.R. 2021) (quoting Bousley v. United States, 523 U.S. 614, 621 (1998)). Petitioner acknowledges that he was not able to appeal the validity of the plea in question. (Docket No. 1 at 11). However, a procedural default does not necessarily foreclose federal relief; the claim may still be raised in habeas "if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Damon v. United States, 732 F.3d 1, 4 (1st Cir. 2013) (quoting Bousley, 523 U.S. at 622); *see also* Oakes v. United States, 400 F.3d 92, 95 (1st Cir. 2005) (citation omitted).

Heightened skepticism toward procedural default is warranted here. Petitioner's entire theory rests on the assertion that he was misinformed about his incarceration when he chose not to appeal. The Supreme Court has clarified that "[t]he procedural default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources…[and] requiring a criminal defendant to bring ineffective-assistance-of-counsel claims on direct appeal does not promote these objectives." Massaro v. United States, 538 U.S. 500, 504 (2003). Hence, Petitioner may properly bring an ineffective assistance claim under § 2255 regardless of whether he could have raised it on direct appeal. Id.

### C. Grounds One and Two: Ineffective Assistance of Counsel and Denial of Right to Appeal

Santana-Aviles states that his counsel's incorrect calculation of the imprisonment term inhibited his ability to make a voluntary and informed decision as to pursuing an appeal.[4] (Docket No. 1).

As mentioned above, Petitioner may properly bring an ineffective assistance claim under § 2255 regardless of whether he could have raised it on direct appeal. Massaro, 538 U.S. at 504. For completeness, the Court analyzes Petitioner's habeas under the cause-and-actual-prejudice standard for typical procedural objections to § 2255 motions, Damon, 732 F.3d at 4 (quoting Bousley, 523 U.S. at 622), and finds that Petitioner satisfies it, too.

#### a. Cause

Ineffective assistance of counsel can clearly supply the cause element of the cause-and-actual-prejudice standard. Santiago-Gonzalez v. United States, 2021 WL 5570305, at *3 (D.P.R. 2021) (citing Feliciano-Rivera v. United States, 115 F. Supp. 3d 243, 251 (D.P.R. 2015)); *see also* Murray v. Carrier, 477 U.S. 478, 488 (1986).

---

[4] While Petitioner lists an additional ground labeled "Denial of right to appeal," its supporting facts repeat his first legal theory--that his attorney's lack of competence in understanding and relaying the combination of concurrently and consecutively running sentences pursuant to case 22-cr-82-2 deprived him of an informed call about appealing the judgment. (Docket No. 1 at 10-11). The Court considers these two grounds together.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "It is well settled that the Sixth Amendment right to counsel guarantees effective counsel." Feliciano-Rivera, 115 F. Supp. 3d at 248. The Supreme Court has adopted a two-pronged test for finding ineffective assistance of counsel, requiring: (1) counsel's assistance to fall below an objective standard of reasonableness, and (2) this deficiency to be prejudicial to the defense. Strickland, 466 U.S. at 686-88. When counsel's actions deprive a defendant of an appeal he would otherwise have taken, the error rises to the level of "constitutionally deficient performance" and the petitioner "has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000). The Flores-Ortega framework is relevant whenever counsel's incorrect post-sentencing advice results in the defendant declining to pursue an appeal. Id. at 476-77; *see, e.g.*, Garcia v. United States, 278 F.3d 134, 137 (2d Cir. 2002) ("[a]s the Supreme Court recently explained, the familiar Strickland standard applies to claims of ineffective assistance of counsel in connection with the failure of trial counsel to pursue an appeal").

The instant case requires the Court to determine whether error occurred. Petitioner's § 2255 motion claims his attorney

incorrectly advised him that only the 24 months from case 20-cr-400 would run consecutively to his new 144-month sentence, without mentioning the 44 months from case 21-cr-30-2 that would also run consecutively. (Docket No. 1 at 10). On the other hand, the Government conclusorily declares that "Petitioner has not identified any specific act or omission by counsel that fell below an objective standard of reasonableness." (Docket No. 9 at 4).

A review of the docket in case 22-cr-82-2 reveals a startlingly clear answer to the question of whether error occurred. On February 24, 2025, more than seven months after the sentencing hearing in which Petitioner was allegedly misinformed as to the length of his sentence, Petitioner's counsel filed a *Motion Requesting a Hearing to Clarify Sentence Imposed*. (22-82, Docket No. 615). In it, Petitioner's counsel--the same attorney appointed on March 4, 2022 by the Court to represent Petitioner throughout case 22-cr-82-2, *see* (22-82, Docket No. 20)--admitted that his "sincere understanding" had been that that only the 24 months from case 20-cr-400 would run consecutively to Petitioner's new 144-month sentence. (22-82, Docket No. 615 at 1). Instead of informing his client of the cumulative 212-month imprisonment term, counsel acknowledged he advised "Mr. Santana-Avilés he was being sentenced to [168 months], which directly informed his decision to not appeal the sentence." Id. at 3. Counsel confessed that "there was an error in interpretation during the Sentencing Hearing, which gravely

affects the rights of Mr. Santana-Avilés, who should not be penalized for said error." Id. at 4.

The parties have not provided, and the Court has not found, case law addressing Petitioner's exact claims. Counsel simply misunderstood the prescribed length of Petitioner's imprisonment during sentencing and afterward. Relying on that erroneous information, Plaintiff did not appeal. However, two scenarios in the case law are sufficiently analogous to render it clear that Petitioner suffered from deficient assistance of counsel here and is entitled to an appeal.

First, the "duty to consult" regime established in Flores-Ortega itself suggests that an attorney's failure to properly communicate with his client, when it results in the loss of an appeal, is enough to establish an ineffective-assistance claim. 528 U.S. at 480. In that case, the Supreme Court held that there is "a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think. . .that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)." Id. This duty to consult applies, for example, "when the defendant has not clearly conveyed his wishes one way or the other." Id. at 477.

Although the Flores-Ortega line of cases deals with attorneys' failure to consult, and Petitioner's counsel **did** consult him in this case, the Court finds that affirmatively

misinforming a client regarding the terms of his sentence is worse than simply failing to talk to him. Moreover, the duty to consult established by Flores-Ortega is not satisfied by mere contact, but requires that the attorney "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes." Id. at 478. Needless to say, informing your client that he will serve nearly four years less than his actual sentence deprives him of an accurate reading of "the advantages and disadvantages of taking an appeal." Id. Here, as in Flores-Ortega, "counsel's constitutionally deficient performance deprive[d]" Plaintiff of "an appeal that he otherwise would have taken," and so he "has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Id. at 484.

Second, case law from several circuits, including binding First Circuit precedent, suggests that ineffective assistance occurs when an attorney (1) tells a defendant an appeal is not possible even though it is, or (2) hoodwinks a defendant into believing that an appeal has been filed when it has not been. For instance, the Second Circuit has, in several cases, recognized that ineffective assistance of counsel occurred when defendants' attorneys erroneously told them appeals were not possible. *See, e.g.*, Garcia, 278 F.3d at 134 (vacating the initial sentence and remanding because defendant's counsel incorrectly stated on record

that defendant had waived his right to an appeal in his plea agreement); Abreu v. United States, 2023 WL 6632951 (2d Cir. 2023) (repeating the Garcia holding and reiterating that "when counsel mistakenly advises that a defendant has no right to appeal, relief is warranted"). Lastly, the First Circuit considered a marginally divergent version of this scenario when an appellant alleged his attorney had deceived him by falsely leading him to believe that an appeal had been filed. Desmond v. United States, 333 F.2d 378 (1st Cir. 1964). Desmond held that a "federal prisoner who has been effectively deprived of his right to appeal by deception practiced upon him by his counsel is entitled to present by motion under § 2255 errors ordinarily cognizable only on appeal." Id. at 380.

Counsel for Petitioner's affirmative misadvice was a slightly different flavor of the same variety. Accidentally relaying an incorrect sentence length to Petitioner in this case had the same effect as misleading or deceiving him about his appeal options, since all these forms of misadvice would have functioned to arm Petitioner with false information just as he was foregoing his appeal. Hence, Petitioner was "effectively deprived of his right to appeal" by his counsel's mistake and should be allowed to make use of an out-of-time appeal. Id. at 380.

**a. Actual prejudice**

The second half of the cause-and-actual-prejudice standard for typical procedural objections to § 2255 motions is the same as the ineffective assistance prong under Strickland requiring that counsel's error be prejudicial to the defense. *Compare* Damon, 732 F.3d at 4 (quoting Bousley, 523 U.S. at 622) (describing "actual prejudice" for procedurally defaulted § 2255 motions) *with* Strickland, 466 U.S. at 686-88 (defining prejudice for ineffective assistance of counsel claims). The question is whether there is a "reasonable probability" that, but for counsel's deficient performance, "the defendant would have timely appealed." Flores-Ortega, 528 U.S. at 482.

Courts applying the actual prejudice standard to appeals misadvice-based ineffective assistance claims have pointed out that it would be a "futile exercise" to require the petitioner to first request their attorney to file an appeal, when it is ineffective assistance that cost them the appeal in the first place. Garcia, 278 F.3d at 137-38. "Instead, as when a court mistakenly informs a defendant that he has no right to appeal, relief is appropriate unless the Government can show by clear and convincing evidence that the defendant actually appealed or had independent knowledge of his right to appeal and elected not to do so." Garcia, 278 F.3d at 138; *see also* Rojas-Medina v. United States, 924 F.3d 9, 12 (1st Cir. 2019) (citing Flores-Ortega, 528

U.S. at 483) ("[t]he [Supreme] Court went on to hold that when an attorney violates this duty [to consult as to an appeal], a presumption of prejudice arises"). Moreover, Garza teaches that prejudice is **presumed** when counsel's deficient performance results in the loss of an appeal, even if an appeal waiver exists. Garza, 586 U.S. at 247 ("[w]e hold today that the presumption of prejudice recognized in *Flores-Ortega* applies regardless of whether a defendant has signed an appeal waiver").

Here, the Government makes no showing that Santana-Aviles had knowledge of his actual sentence and still chose not to pursue a case in the higher tribunals. Instead, the record reveals that Santana-Aviles' attorney misapprehended the term of the sentence imposed. (22-82, Docket No. 615).

Petitioner plausibly alleges and demonstrates a reasonable probability that, but for his attorney's mistaken and incorrect post-sentencing advice, he would have appealed. Therefore, he has shown Strickland prejudice, 466 U.S. at 686–88, and has demonstrated the actual prejudice required to overcome a supposed procedural default. Damon, 732 F.3d at 4 (quoting Bousley, 523 U.S. at 622). The appeal waiver he agreed to does not serve as a bar to his ineffective assistance claim. Garza, 586 U.S. at 247.

Hence, the Court finds that Santana-Aviles was deprived of effective support of counsel when his lawyer misunderstood the length of his sentence, and he "has made out a successful

ineffective assistance of counsel claim entitling him to an appeal" under Flores-Ortega. 528 U.S. at 484. An evidentiary hearing is unnecessary given that the existing record conclusively establishes counsel's ineffective assistance and the denial of Santana-Aviles' right to appeal.

The Court recognizes that Petitioner's appeal may ultimately be an exercise in futility due to the appeal waiver. However, it is not for this Court to make that determination. Supreme Court precedent makes plain that protecting the right to appeal outweighs prognostications as to the merits from the court presiding over post-conviction relief. *See* Flores-Ortega, 528 U.S. at 483 (the "serious denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right...demands a presumption of prejudice"); Garza, 586 U.S. at 247 ("[w]e hold today that the presumption of prejudice recognized in *Flores-Ortega* applies regardless of whether a defendant has signed an appeal waiver").

### D. Vacatur of the Judgment and Reentry of the Same Sentence Is the Appropriate Means of Allowing for an Out-Of-Time Appeal

"The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." United States v. Torres-Otero, 232 F.3d 24, 30 (1st Cir. 2000) (citations and quotations omitted). District courts' broad remedial powers under § 2255 stem from the equitable nature of habeas corpus. Id. There

is "uniform agreement" that resentencing is not required when the right to appeal is lost through counsel's error; instead, the district court must vacate the challenged criminal judgment, reimpose the initial sentence, and then inform the petitioner of his resuscitated appeals rights. Id. at 30-32 (compiling a list of circuits, including the Eighth and Eleventh, that allow district courts to open the window for an out-of-time appeal by vacating and reimposing the initial sentence).

To permit Santana-Aviles to appeal, his sentence will be vacated and a new judgment entered. The Court sees no reason to reconsider the sentence, so he will be resentenced to the same terms as his initial sentencing. *See* id. at 30.

### IV. CONCLUSION

Based on the foregoing, Petitioner Miguel Santana-Aviles' *Motion Under 28 U.S.C § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* (Docket No. 1) is, with respect to his right to appeal in case 22-cr-82-2, **GRANTED**. Petitioner's conviction in case 22-cr-82-2 will, on December 18, 2025, be **VACATED** and a judgment will be entered that is identical to the previous judgment in all respects except for the date of entry.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of December 2025.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge